Good morning, Your Honors. May it please the Court, Charles Cote, appearing on behalf of Plaintiff and Appellant, Shame On You Productions, Inc. It's been said that copyright law is one that inherently concerns one's reactions to relatively fluid concepts and rules. And that is particularly true in the area of artistic expression. The U.S. Supreme Court's recent decision in Kurtzang requires that a court give substantial weight to the objective reasonableness of the losing party's position in analyzing whether or not an award of attorney's fees is proper under 17 U.S.C. Section 505. While you're on that, can I ask you please, in what way, if at all, did Kurtzang change the five-factor test that we previously applied in Wall Data, Inc. v. L.A. County Sheriff's Department? Well, it indicated that it had to give substantial weight to the objective reasonableness factor, and that factor had to be implicitly weighed more heavily. So in other words, the factors generally haven't changed, but the objective reasonableness is the giant of all, right? That is the overriding consideration, right? That is the overriding consideration, Your Honor. The Kurtzang decision was brought directly to the attention of the district court two weeks prior to the issuance of its Sunday order. It made no mention of the case, made no analysis under the case, which, of course, was controlling precedent given its issuance. And, indeed, the Sunday order even awarded costs in a different amount than those that were already on appeal before this court. Its issuance was quite unusual in that regard. In any event, I guess my concern is this. The reason I ask you the question that I did is clearly the court had the five-factor test in mind. Kurtzang gave greater emphasis to one of those factors. Was it necessary that Judge Phillips mention Kurtzang in making an analysis if, in fact, she focused on the objective reasonableness and said so? Your Honor, the order from Judge Phillips, which essentially was Morrow's tentative in all respects, essentially, did not indicate that it gave greater weight to that factor. Did she have to? Under Kurtzang, she does. Does she have to say that's what she's doing? In other words, if she does, does she have to say that's what she's doing? I believe that to do the analysis required under Kurtzang, you have to acknowledge that you need to give substantial weight to that factor over the others. And that was not done. I guess I understand your position. You said that the court was made aware of it. She probably was well aware of it anyway, but she was made aware of Kurtzang. You made a point of it. She makes a ruling, admittedly tying back to Judge Morrow's earlier determination, and arguably that was a factor that she weighed heavily. What more under Kurtzang has to be done? I don't read in Kurtzang any express requirement that a judge making this determination has to say right now I'm going to do the objective reasonableness analysis required by Kurtzang, and this is my analysis. That's not required in Kurtzang, is it? Meaning an express acknowledgment that that's what you're doing. Your Honor, Kurtzang does not have an explicit acknowledgment requirement, nor does any Supreme Court case saying you must explicitly say this when applying these factors. However, it did make clear that that factor had to be given substantial weight and was the most important factor. Kurtzang also reaffirmed that the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purpose of the Copyright Act. The Ninth Circuit in the recent copyright decision, Williams v. Gay, which was authored by Your Honor, was important in its reaffirmance of the fact of the Metcalfe v. Bochco decision, and that decision stands for a number of important principles governing copyright infringement actions in the Ninth Circuit. One, that the inverse ratio rule applies a sliding scale in cases of copyright infringement where access is greater, a lesser showing of substantial similarity is required. That's true, but perhaps I didn't see this in the case. I thought that there was a back and forth with discovery. People were asking, well, where's your copy? What are you looking at? What evidence is there? And I thought that there was just very little evidence of a lot of knowledge about something, about the, in other words, one didn't have a copy of the work, in effect, that was copied. So you don't have an inverse ratio situation where like in Williams, you know, they bragged about the music that they loved, they wanted to be just like Marvin Gaye, et cetera, et cetera. And they acknowledged it on television. So you don't have that here, do you? We do, Your Honor. There was direct access with the lead actress of the film. There was direct access through United Talent Agency, which represented both the lead actress and the writer-director in the film. And there was also direct access with Todd Garner, whose production company, Broken Road, also received a copy of the screenplay and was paid $250,000 as an uncredited producer in exchange for a certificate of results and proceeds. We knew that Ms. Banks had a copy of it, but the additional access only became clear through court-ordered discovery. So the discovery basically moved the ball down the field and actually changed our burden as the case was being prosecuted. Because of the inverse ratio. That's correct. And the complaint was a comparison of the film, but there was a time code line page reference to the screenplay itself. Ms. Banks had that screenplay for seven or eight years. So they had access before the case was filed. Does access alone solve your problem, or is it evidence that shows, you know, not only access, but use of it? In other words, say hypothetically, say I had a copy of the script. Somebody said, hey, I've got this wonderful script here, and I put it in my chambers, and I put it over in the corner, and I never looked at it. I have access to it, but I don't look at it. Does that make any difference in our analysis? Your Honor, what I would say is that it creates a question for the average audience to decide whether or not your account of never having looked at a screenplay that was provided to you in the first place. And then you decided to meet with the author of the screenplay after you were provided a copy of the screenplay to talk about it, whether or not that factual account that you never read it, even though you took the meeting, was credible. Obviously, substantial similarity is the second part of the equation. And that's probably your biggest hurdle here, isn't it? Your Honor, it's not a hurdle in that to look at whether or not our litigation position was objectively reasonable. Our position was supported by two uncontradicted industry experts. One was a screenwriting professor at the University of Texas, Cynthia McCreary, who prior to entering academia had done script coverage at one of the major studios for many years. In her opinion, the numerous similarities were not coincidental and were substantially similar and evidenced access and copying by the defendants. We also had a second industry expert, producer David Hader of the film The X-Men, which led to one of the most successful motion picture franchises in Hollywood, who echoed the findings of Ms. McCreary. So we had expert opinion. We had a great degree of access. We learned about even more access once the discovery was ordered by the district court. And we would submit, Your Honor, that the fact that expert opinion is routinely admitted in music copyright cases, such as Williams v. Gay, where what's at issue is a few seconds of a snippet of a song. But is routinely excluded as extrinsic when analyzing audiovisual works in relation to works of a different medium on the written page. And that audiovisual work can be hours or many hours in length if it's a television series, defies logic. In this case, the district court never found the plaintiff's experts to be unqualified. She simply found their opinions to be extrinsic evidence and did not admit it. Nevertheless, the district court did note articulable similarities in the so-called tow yard scene and the comedic helicopter ride scene with the romantic leads at the end of the film. And at oral argument, Judge Plager's questioning about the derivation of that helicopter ride scene and how it was so similar in Darcy's walk of shame and ended up in walk of shame, that question was never answered. We would submit, as Judge Schroeder wrote in Newton v. Diamond, if a use is de minimis only to the average audience, only if the average audience would not recognize the appropriateness of the use. And in this case, we were confident that given the great degree of access and the fact that we had uncontradicted experts supporting our position, that a jury would make this determination whether or not the taking was de minimis. The other fact that was important was the district court never recognized that a pattern of appropriateness to the average audience was de minimis. And we would also submit that because the district court declined to exercise supplemental jurisdiction, we refiled the implied contract claim instead. And we would also submit that because the district court declined to exercise supplemental jurisdiction, we refiled the implied contract claim instead. This is a highly subjective one. And Coate's saying is clear, that a court cannot confuse the issue of liability with reasonableness and an unsuccessful claim does not equate to a case being objectively unreasonable. Let me ask you this counsel, let's just say, arguendo, that I think you have a fairly good argument about whether the district court can be a reasonable judge overestimated the extent to which bad faith was involved and perhaps on the deterrence factor. But on the other hand, from her perspective, a very substantial objective reasonableness factor here. Under Coate's saying, can the objective reasonableness factor override the analysis on those other two points I mentioned? It's unclear if any one factor can totally override another. And I don't think Coate's saying specifically addresses it and I didn't see anything in the recent decisions that specifically address it. What I see in Coate's saying is that that is the factor that needs to be given the most substantial weight. But again, all of the factors need to be looked at in terms of what public policy is supposed to be. And I don't think Coate's saying that the district court has served in serving the interest of the Copyright Act in balancing the rights of authors against those who might infringe their works. I see my time is coming to a close. Can I have another minute or two? Well, not now, but we may give you a minute after we hear from the other side. All right, thank you. Good morning. I take it you disagree with him. I do, in a number of respects. But most importantly, I think it is critical to understand at the beginning something that might have been lost if you were merely listening to Mr. Coate's argument, and that is that the merits of this case have already been decided. There is, as I'm sure the Court is aware, a unanimous affirmance of the district court's decision on the merits. And that decision, legally, is a decision that no reasonable trier of fact has ever made. No trier of fact could conclude that the plaintiff's work was substantially similar to the defendant's work. Four judges, the district court judge and three members of the Ninth Circuit, have unanimously concluded that no reasonable trier of fact could find them substantially similar. That, we submit, is a conclusive, binding, final decision that there is no reasonable trier of fact. There is, in fact, no objective basis for reasonableness in this case. And that, under those circumstances, given Curt's saying, is it your view that the district court was applied the appropriate weighing, overriding perhaps a lesser showing under bad faith, for example? The, it is our view that the district court properly weighed the factors under the Fogarty decisions. Curt's saying does not change the factors. Curt's saying dealt with what I will call a small question of weighing that had arisen in the Second Circuit as a result of language that was, in the Court's eyes, borderline dicta in a number of decisions in the Ninth Circuit. And that, in fact, is not the case in New York. The essence of the Curt's saying decision is that objective unreasonableness is the most important factor, but that the court, the district court, in awarding fees is supposed to weigh all of the factors. The 42-page decision by Judge Phillips here contains lengthy discussion of the factors, including four pages weighing the objective unreasonableness, and a lengthy discussion of the other factors that are set forth in this Court's Fogarty decisions. In each case, she finds that those factors weigh in favor of an award of fees. Her award, under this Court's jurisprudence in Fogarty 2 and the more recent Perfect 10 decision, is reviewed for abuse of discretion. There is simply nothing here on this record that would warrant in any way the Court reexamining what was the objective unreasonableness. It was a detailed and intense examination of the underlying record by Judge Phillips. The reliance here, which mirrors the reliance in the merits portion of the case, on the inverse ratio rule, continues to be puzzling to me, Your Honor, because I believe, as we argued successfully in the merits portion of the appeal, that plaintiff simply misunderstands the inverse ratio rule altogether, and that it is utterly inapplicable to the ruling here. There has been, in this circuit, a recent decision, about six weeks ago, in a case called Rentmeester v. Nike, involving the famous Michael Jordan image, in which the Court, very concisely, very clearly, and to my eyes, very wonderfully, sets forth the distinction between probative similarity, which is used to create a kind of a legal inference that physical copying existed, and actionable similarity, which is the heart of a substantial similarity analysis. And I heartily commend the portions of that opinion that distinguish between the two to the Court, because the entire discussion of the inverse ratio rule relates to the probative similarity analysis, which is not the basis that they lost the case. They lost the case on the actionable similarity test because all of the judges concluded that there was simply no basis to bring a copyright case between these two works. The case is now closed. I'd like to conclude, in the absence of any questions, by pointing out one additional fact, which has not been the focus of much of the litigation, but is apparent from the face of the pleading. I represent here today Lakeshore Entertainment, which made this movie. I also represent Elizabeth Banks, an actress who appeared in the movie. As you can see from the pleading, I represent six or seven other parties who were also sued in this case. All of my clients were brought together under the allegation that there had been a copyright infringement by the making and distribution of this movie. That claim was asserted against everyone from a person who financed the movie to a person who set out the movie at the end, to a person who financed the movie. A gentleman by the name of Max Handelman, and you can read this record from top to bottom, and you will not, for the life of you, figure out why Max Handelman was sued for copyright infringement. Mr. Handelman is Ms. Banks' husband. He made the crucial mistake of attending a lunch. And because he attended a lunch, he was sued for copyright infringement and made a defendant in a federal case that went for over a year. There is no allegation, there's no possible allegation, that Mr. Handelman's consumption of one Mexican restaurant meal somehow could constitute copyright infringement, and yet he was sued and had to defend. One of the reasons that this case screams for objective unreasonableness is that it was brought as a blunt instrument. It was brought with an intent to force a settlement by making it as big, as broad, as painful, and as expensive as it could be. And the district judges below recognized that. You can see it in Judge Morrow's opinion, you can see it in Judge Phillips' opinion. They recognized that that was something that had been done here and that it was wrong. Your Honors, I respectfully urge you to let this award stand because somebody needs to say this was wrong. Were you the counsel in the merits as well? Well, I'm just curious. We don't see judgments on the pleadings in copyright cases very often. I was just curious, do the pleadings have all of this stuff in them or make these kinds of detailed descriptions of what was in each one? I'm just sort of curious. The pleading that was filed by the plaintiff in the case does, in fact, contain lengthy pages and pages and pages of discussion of what is in the works. Most of that discussion constitutes counsel's characterization of what was in the work. There is a lovely portion at the front end of the merits brief where we talk about the description of the plaintiff's dress in his screenplay and the dress that was the focus of my client's movie. The plaintiff's dress is a puffy pink bridesmaid's dress, which is described in very unattractive form. The photo of the movie, which is in our briefs, shows the yellow cocktail dress that Ms. Banks wore in the film. They are as far apart as you could possibly want. I'm just curious as to whether this was really all in the pleadings. A lot of it is. I was making the very long and indirect point that the pleading focused on the fact that counsel describes them as both striking and iconic dresses, although you can look at both of them clearly.  The simple answer to Your Honor's question is that the district court took cognizance of the actual works themselves. The reason that the fight over getting the actual copy of the plaintiff's screenplay plays such a big role here is that screenplay had to be in the hand of the judge for her to make the 12B ruling. Right. And so we fought hard to get them to say, this is the one, so that Judge Morrow could read it and go, really? That's what you're suing on? Yes, she did. Okay. Thank you, Your Honor. Thank you, counsel. Thank you. So, sir, we're going to give you a minute. You used your time, but I know you want a minute, so we're going to give you one because we've been able to move through this calendar with alacrity. So we'll give you a minute. You're making it look like we've got your back, aren't you? Your Honors, we would submit that from a public policy standpoint, if this order is upheld, it will effectively bar the courthouse door to all but a few future copyright claimants because it will stand for the proposition that it doesn't matter if a defendant has access to your work. It doesn't matter if a defendant concedes access to your work. It doesn't matter if the defendants concede some copying of the work. They just argue it wasn't enough. And it doesn't matter if you have qualified experts supporting your case because if you are wrong on where on that sliding scale, a determination is made that it's not enough, and it's not made by a jury as you want it to be, it's made by a judge, then you will face financial ruin. And that does not serve the interests of the balance under the Copyright Act that's addressed in Kurtzing. Okay. Thank you, counsel. Thanks to both counsel for your arguments. The case just argued is submitted, and the court stands adjourned for the week. Thank you.
judges: Schroeder, Clifton, M. Smith